UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY ROBINETT, | No. C 09-3845 SI (pr) |
|     Plaintiff, | **ORDER OF DISMISSAL WITH LEAVE TO AMEND** |
|     v. | |
| CORRECTIONAL TRAINING FACILITY; et al., | |
|     Defendants. | |

## INTRODUCTION

Tony Robinett, an inmate at the Correctional Training Facility in Soledad, filed a pro se civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

The complaint alleges the following: Robinett was moved to a new cell and assigned to the upper bunk on September 11, 2008. The upper bunks were "only equipped with two (2) step prongs – and nothing more, e.g., no hand fixtures or ladders– plaintiff was compelled to utilize the sink, wall, and toilet in order to successfully mount the upper bunk." Complaint, p. 6. When he attempted to get off the upper bunk, the 2-step prongs were inadequate "to facilitate safe dismounting," and that inadequacy forced him to use "the wall, sink and toilet to brace himself for dismounting." Id. He fell while descending. When he fell, he cut his head on the toilet paper holder (so that he needed at least 19 stitches) and broke his right foot on the toilet. He also

hurt his back and neck, and exacerbated pre-existing injuries.

He reported his injuries and immediately was taken to Natividad Medical Center in Salinas, where he was treated for his broken foot and head laceration. He was given a set of crutches and was scheduled for follow-up treatment and "to be formally fitted with a cast for his broken foot." Id. at 7. He never received a cast, despite numerous requests.

Robinett's broken foot made it difficult for him to use the upper bunk so he requested to be medically assigned to a lower bunk. Sergeant Randall directed him to the central medical office to obtain a lower bunk chrono. Unidentified medical staff informed him that they were not allowed to accommodate him with a lower bunk chrono, that he needed to "'do the best he [could] . . . and to fill out a 'medical request'" for further treatment. Id. at 8. He submitted a medical request, but never received a response.

On September 17, 2008, he filed an administrative appeal. A lower bunk chrono was issued on September 11, 2008 (about 2 weeks after the fall), although he didn't actually get assigned to a lower bunk until over a month after the fall. Before the chrono was issued, defendant Galvan came to his cell to check to see if he actually had a broken foot requiring a lower bunk assignment, but wasn't interested in hearing about how Robinett fell and told him to stop whining because he would get a lower bunk. Robinett asked to see Galvan's superior. The supervisor, defendant Guerra, came by days later, and also was unsympathetic, telling Robinett to learn how to stay on the bunk "and not fall off like some jerk." Id. at 10. Defendant Galvan told Robinett during a later interview about the appeal that his request for a lower bunk was granted and his remaining claims about the defective upper bunk were denied. The appeal response stated that the climbing step was designed for the person to face the bunk bed while entering or exiting the upper bunk. Robinett alleges that, "to date, neither Defendant Galvan – nor any CTF official – has demonstrated for Plaintiff or provided Plaintiff with any written instructions as to how to use the two climbing steps despite Plaintiff's request for the same." Id. at 11. Robinett appealed the denial of his inmate appeal to higher levels, where defendants White, Curry, Allen and Grannis denied it.

1    Robinett contends that defendants "continue to ignore the critical need to have its (sic)
2 upper bunks equipped with adequate climbing fixtures thereby rendering CTF and its bunk
3 manufacturers and installers liable to Plaintiff by having subjected to a grossly defective product,
4 to wit, the 'upper bunk(s) at CTF." Id. at 12.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A.   The Bunk Beds

The complaint fails to state a § 1983 claim for a constitutional violation based on the alleged danger presented by the condition of the bunk beds. There are problems with the substance of the claim, as well as the proposed defendants for the claim.

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. See id. at 834. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently

grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citation omitted).

The ladderless bunk beds do not satisfy the objective prong for an Eighth Amendment violation. The Eighth Amendment's prohibition of cruel and unusual punishment "imposes a duty on prison officials to provide humane conditions of confinement and to take reasonable measures to guarantee the safety of the inmates. However, every injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials." Osolinski v. Kane, 92 F.3d 934, 936-37 (9th Cir. 1996). Requiring an able-bodied inmate to use a bunk bed with two climbing steps but without a ladder or handrails does not deny him the minimal civilized measure of life's necessities. See Connolly v. County of Suffolk, 533 F. Supp. 2d 236 (D. Mass. 2008) (summary judgment granted for defendants because ladderless bunk beds did not meet objective component of Eighth Amendment in light of evidence that "[t]housands of . . . inmates access bunk beds daily without the aid of a ladder and without incident" and only about a dozen injuries had been reported);[1] see generally Osolinski v. Kane, 92 F.3d at 938 (defendants entitled to qualified immunity against prisoner's Eighth Amendment claim stemming from second degree burns suffered when oven door fell off its hinges and burned his arms); Jackson v. State of Arizona, 885 F.2d 639, 641 (9th Cir. 1989) (slippery floors, by themselves, do not amount to cruel and unusual punishment).

---

[1] Several unpublished cases also have given short shrift to the ladderless bunk bed claims from inmates. See Brown v. Anderson, 2010 WL 199692, *2 (D. S.C. 2010) (allegations that "defendants failed to provide a safe way for Plaintiff to get into the top bunk of a six foot high bunk bed, which caused him to fall and sustain a head injury . . . . at most, present a claim based on state law for negligence"); id. at *3 (even if it could be inferred "that the defendants had general knowledge that an inmate could possibly slip and fall in attempting to get into a bunk bed, that is not deliberate indifference to a specific risk to Plaintiff that rises to the level of a constitutional violation"); Jones v. La. Dept. of Public Safety and Corrections, 2009 WL 1310940, *2 (W. D. La. 2009) (dismissing on initial review an Eighth Amendment claim from prisoner injured when his foot slipped on cell bars he had to climb on to reach his upper bunk because it didn't have a ladder– condition did not satisfy objective prong of Eighth Amendment test); id. at *4 (summarily dismissing request for injunction compelling prison officials to install ladders on bunk beds); Marino v. United States, 978 F.2d 1263, 1992 WL 315229 (8th Cir. 1992) (affirming summary judgment for defendants on FTCA claim from prisoner who fell while descending from ladderless upper bunk).

4

Robinett's allegations that the upper bunks are "ill-equipped" and "posed a serious risk of harm to all inmates who would be subjected to using such bunks," Complaint, p. 15, are not required to be accepted as true because they are conclusory allegations. Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1947 (2009) (finding under Twombly and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a Bivens action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations). The fact that Robinett fell as he descended without a ladder or handrails does not show that the fall is more likely the result of a dangerous condition/design defect than not. Some things inherently suggest danger (e.g., a chainsaw with no off switch), while some things don't (e.g., a fork). A ladderless bunk bed is much closer to the latter than the former. Even with liberal construction, the complaint does not allege facts that would allow one to determine that the ladderless bunk beds posed a serious risk to Robinett's safety. In his amended complaint, Robinett can attempt to allege facts (beyond the simple absence of a ladder/handrail) to show that the bunk bed posed a serious risk to his safety.

The complaint also does not allege facts suggestive of deliberate indifference by prison officials to a known risk to his safety. Any risk posed by bunk beds without ladders or handrails is not obvious enough to lead to an inference of subjective awareness of a substantial risk of harm to the inmate required to use it. Yet it is just such a risk that appears to be the basis for the claim against the associate warden (White) and the warden (Curry), whose alleged involvement

consists of being responsible for the safety and protection of all inmates and perhaps being aware that the bunk beds in cells did not have ladders/handrails. The complaint fails to state a claim against White or Curry because it does not allege that either of them knew or and disregarded a known serious risk to Robinett's safety. Further, some of the defendants would not have liability on the facts pled, even if an Eighth Amendment claim could be pled, because they did not learn of the problem until after plaintiff fell from the bunk bed. Specifically, defendants Galvan, Guerra, Allen and Grannis, who were sued based on their response to Robinett's inmate appeal filed after he had been injured cannot be said to have caused the injury he already suffered.[2] White and Curry also would not have liability based on any alleged awareness of inmate appeals filed after the fall. In his amended complaint, Robinett may attempt to allege facts suggestive of deliberate indifference by the defendants. He is cautioned that he must link each individual defendant he proposes to hold liable by showing that defendant did or failed to do to cause a violation of his Eighth Amendment rights.

B.   Medical Care Claim

When an inmate alleges that his medical care has been constitutionally inadequate, he must allege two things to state a claim: (1) a serious medical need and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Robinett alleges in his complaint that Doe defendants 1-4, who are members of the central medical staff of the prison whose names are unknown, were deliberately indifferent to his

---

[2]The alleged inadequate responses to the administrative appeals also are not independently actionable. There is no constitutional right to a prison or jail administrative appeal or grievance system in California. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Cal. Code Regs. tit. 15, §§ 3084.1 - 3084.6. Robinett had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to handle it in a particular way therefore did not amount to a violation of his right to due process.

medical needs.³ These defendants allegedly failed to certify him for lower bunk housing after he broke his foot until at least two weeks after the fall, and failed to provide a cast for his broken foot. Liberally construed, the allegations state a cognizable deliberate indifference claim against the Doe defendants (who are the only defendants Robinette has identified for the medical claim).

It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff. Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process until they are identified by their real names. Plaintiff must take steps promptly to discover the full name (i.e., first and last name) of each Doe defendant and provide that information to the court in an amendment to his pleading that explains what each such person did or failed to do that caused a violation of his constitutional rights. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants. If, in his amended complaint, Robinett does not provide true names for the Doe defendants, and does not state a claim against any named defendant, the whole action will be dismissed without prejudice to him suing the Doe defendants if he ever learns their identity.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed with leave to amend. The amended complaint must be filed no later than **August 20, 2010**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims and will supersede existing pleadings. See London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981) ("a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint.") Failure to file the amended complaint by the deadline

---

³Plaintiff attempts to label his medical care claim as a claim under the Fourteenth Amendment's Due Process Clause. Because he was a prisoner at the relevant time, his claim arises under the Eighth Amendment, rather than the Fourteenth Amendment. See generally Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).

7

1  will result in the dismissal of the action.

2      IT IS SO ORDERED.

3  Dated: July 20, 2010

                                                                             _____

4                                                                               SUSAN ILLSTON  
                                                          United States District Judge

**United States District Court**
**For the Northern District of California**